1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CELESTE HOLLAND,

Plaintiff,

v.

JOHN AZEVEDO, et al.,

Defendants.

Case No.  14-cv-01349-JST

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Re: ECF No. 65

Plaintiff Celeste Holland, proceeding *pro se*, alleges unconstitutional conduct stemming from a traffic stop and her arrest.  ECF No. 21.  Presently before the Court is Defendants John Azevedo, Robert Estes, and Shawna Pacheco's Motion for Summary Judgment.  ECF No. 65.  Because there is no evidence before the Court from which the Court can find a dispute of material fact, the Court will grant Defendants' motion.

I.      **BACKGROUND**

A.      **Undisputed Facts[1]**

On March 23, 2012, California Highway Patrol ("CHP") Officer Azevedo conducted a traffic stop on Plaintiff's car at Interstate 680 southbound under the Interstate 580 flyover.  ECF No. 65-1, Azevedo Decl. ¶ 3.  Azevedo initiated the stop because Plaintiff's car traveled partially on the center divider and merged quickly two lanes to her right.  Id.  When Azevedo positioned his patrol vehicle behind Plaintiff's car, he noticed that Plaintiff's car had an expired registration sticker.  Id.  Azevedo approached Plaintiff's car on the passenger side and requested Plaintiff's

---

[1] In support of the motion for summary judgment, Defendants filed declarations from Defendants Azevedo, Estes, and Pacheco.  See ECF No. 65-1, Azevedo Decl.; 65-2, Estes Decl.; 65-3, Pacheco Decl.  Defendants also submitted two DVDs containing CHP dashboard camera video footage of Plaintiff's traffic stop and arrest.  See ECF No. 65-3, Pacheco Decl., Ex. A.  Plaintiff also submitted this footage with her First Amended Complaint ("FAC").  ECF No. 21.  Plaintiff did not oppose Defendant's motion or submit other evidence.

driver's license, vehicle registration, and proof of automobile insurance.  Id.  Plaintiff asked

Azevedo if he was a public servant.  Id.  Officer Azevedo answered that he worked for the State of

California, and he repeated his request for Plaintiff's license, vehicle registration, and proof of

automobile insurance.  Id.  Plaintiff told Azevedo he had no right to stop her, she was not required

to have a license because she was not conducting business, and she did not need registration or

auto insurance to drive.  Id.  Plaintiff provided her passport as identification.  Id.

Officer Azevedo then contacted CHP dispatch, who informed Azevedo that Plaintiff's

vehicle registration and driver's license were expired.  Id. ¶ 4.  Azevedo requested a backup patrol

unit, and CHP Officer Estes arrived on the scene to assist.  Id.  Azevedo administered a DUI

evaluation and determined that Plaintiff was not under the influence of drugs or alcohol.  Id.

Plaintiff then returned to her vehicle.  ECF No 65-3, Pacheco Decl., Ex. A.  Thereafter, Azevedo

issued Plaintiff a CHP 215, Notice to Appear, for violations of California Vehicle Code

§ 4000(a) – expired registration; Vehicle Code § 12500(a) – unlicensed driver; and Vehicle Code

§ 16028(a) – no proof of insurance.  ECF No. 65-1, Azevedo Decl. ¶ 4.  Plaintiff signed the

citation, see id., but in her First Amended Complaint, Plaintiff asserts she should have been free to

go and continue traveling, ECF No. 21 ¶ 5.

Because of Plaintiff's expired license, Officer Azevedo decided to impound her car

pursuant to Vehicle Code §14607.6.  ECF No. 65-1, Azevedo Decl. ¶ 5.  Azevedo offered Plaintiff

the option of calling someone to pick up her car, but Plaintiff refused and repeated that she did not

need to have a driver's license.  Id.  Azevedo ordered Plaintiff to gather her belongings and exit

the car, but Plaintiff refused to comply.  Id.  Plaintiff responded by locking the car doors and

rolling up the windows.  Id.  Azevedo ordered Plaintiff to gather her belongings and exit the car

several times, but when it became clear that she would not comply with his orders, Azevedo

notified dispatch and requested the on-duty supervisor to respond to the scene.  Id.

Both a tow truck and CHP Officer-in-Charge ("OIC") Shawna Pacheco arrived on the

scene shortly thereafter.  ECF No. 65-3, Pacheco Decl. ¶ 6.  After Azevedo briefed Pacheco on the

circumstances, Pacheco approached Plaintiff's car on the passenger side and asked her to roll

down the window.  Id.  Plaintiff rolled the window down approximately three inches, and Pacheco

told Plaintiff why she had been asked to get out of her car.  Id.  Plaintiff asked if Pacheco was a public servant and told Pacheco she did not recognize Pacheco's authority.  Id.  Plaintiff informed Pacheco that she was not required to carry any documents because she was not transporting goods or people and because the stop was unjustified.  Id. ¶ 7.  Plaintiff refused to get out of her car and told Pacheco she was not going to allow Defendants to impound it.  Id.  Pacheco explained to Plaintiff that she would give Plaintiff 30 seconds to exit her car, and if Plaintiff failed to comply, the officers would be forced to break her car window in order to enter her car and that Plaintiff would be arrested.  Id.  Plaintiff responded that the officers weren't going to break her window.  Id.

Pacheco then observed Plaintiff grab the ignition key, place the key in the ignition, and roll up the window.  Id. ¶ 8.  Pacheco believed that Plaintiff was attempting to leave the scene, and so she hit the passenger side window twice with a steel baton.  Id.  Officer Azevedo then broke the passenger side window by striking it twice with his baton and unlocked the passenger side door.[2]  Id.; ECF No. 65-1, Azevedo Decl. ¶ 8.  Defendants Azevedo and Pacheco told Plaintiff to get out of the car and thereafter tried to remove Plaintiff through the passenger door.  Id.  Azevedo and Pacheco could not do so, however, because Plaintiff had wedged herself between the driver's seat and the dashboard while clinging to the steering wheel.  Id.  Plaintiff can be heard yelling on the dash board camera video, "Do not touch me" and "I'm not getting out of the car" during this encounter.  ECF No. 65-3, Pacheco Decl., Ex. A.  An officer informed Plaintiff that she was resisting arrest, to which Plaintiff responded, "You are falsely arresting me."  Id.  Plaintiff can then be heard saying "Let go of me.  You're going to hurt me."  Id.  An officer thereafter ordered Plaintiff to get out, and she responded, "I'm not getting out."  Id.

Officer Estes saw the brake lights on Plaintiff's car illuminate, which indicated to him that Plaintiff was stepping on the brake.  ECF No. 65-2, Estes Decl. ¶ 7.  Estes "interpreted the brake lights to mean that [Plaintiff] was preparing to start the bar and attempt to leave the scene."  Id.  Estes positioned his vehicle to left of Plaintiff's vehicle.  Id. ¶ 8.  Eventually, Azevedo moved

---

[2] Over 50 minutes elapsed from when Officer Azevedo pulled Plaintiff over to when he struck her passenger side window.  ECF No. 65-3, Pacheco Decl., Ex. A.

1    Estes' patrol vehicle, and Estes opened the driver's side door and took Plaintiff's arm while

2    Pacheco pushed her out.  Id.  Azevedo and Estes escorted Plaintiff to Azevedo's patrol vehicle,

3    where Plaintiff was placed under arrest for violating Penal Code § 148(a) – obstructing a police

4    officer.  Id. ¶ 9; ECF No. 65-1, Azevedo Decl. ¶ 9.  OIC Pacheco conducted a search incident to

5    arrest of Plaintiff, and then placed Plaintiff in the right rear passenger seat of her patrol vehicle.[3]

6    ECF No. 65-3, Pacheco Decl. ¶ 10.

7         Pacheco transported Plaintiff to Santa Rita County Jail for booking.  Id.  At the jail facility,

8    Pacheco checked Plaintiff for visible injuries and noted a small scratch on Plaintiff's right wrist

9    that she had received from the broken glass, as well as two spots of blood on her right forearm.  Id.

10   ¶ 11.  Pacheco informed Plaintiff she would be treated for her injuries and took photos of her

11   them.  Id.  Plaintiff did not claim additional injuries or request to be taken to the hospital.  Id.

12   Other than searching Plaintiff incident to arrest, escorting Plaintiff in and out of the patrol vehicle,

13   and escorting Plaintiff through the booking process, Pacheco avers she did not touch Plaintiff.  Id.

14        Based on Defendants' observations and Plaintiff's statements and actions, Defendants state

15   Plaintiff violated Vehicle Code § 4000(a) – expired registration; Vehicle Code § 12500(a) –

16   unlicensed driver; and Vehicle Code § 16028(a) – no proof of insurance.  ECF No. 65-1, Azevedo

17   Decl. ¶ 10; ECF No. 65-2, Estes Decl. ¶ 10; ECF No. 65-3, Pacheco Decl. ¶ 12.  Defendants assert

18   that under Vehicle Code § 14607.6(c)(1), they had the authority to impound and tow Plaintiff's

19   vehicle.  Id.  Defendants also state they had probable cause to arrest Plaintiff for violating Penal

20   Code § 148(a) – obstructing a police officer.  Id.

21        All three Defendants state that they did not target or retaliate against Plaintiff because of

22   her speech.  ECF No. 65-1, Azevedo Decl. ¶ 11; ECF No. 65-2, Estes Decl. ¶ 11; ECF No. 65-3,

23   Pacheco Decl. ¶ 13.  Defendants assert they had probable cause to arrest Plaintiff and impound her

24   vehicle.  Id.  Defendants also aver that they did not deny or attempt to deny Plaintiff her right to

25   counsel during her criminal proceedings.  Id.

26

27

28   _____
     [3] Pacheco's search incident to arrest was out of the dash board camera's view.  See ECF No. 64-3,
     Pacheco Decl., Ex. A.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B.      Procedural History

On March 25, 2014, Defendants removed this case from Contra Costa Superior Court pursuant to 28 U.S.C. § 1441.  Plaintiff filed a First Amended Complaint ("FAC") on August 20, 2014 against a number of Defendants, alleging violations of her First, Fifth, Sixth, Eighth, Ninth, Tenth, Thirteenth, and Fourteenth Amendment rights.  See generally ECF No. 21.

The Court then granted the motions to dismiss of Defendants Department of Motor Vehicles, Nancy O'Malley, and Catherine Kobal.  ECF Nos. 31 and 35.  When Plaintiff failed to file an amended complaint against these defendants, the Court dismissed Plaintiff's claims against them with prejudice.  ECF No. 45.

On May 21, 2015, the Court dismissed the claims against Defendants Edmund G. Brown, Jr., Anne Gust Brown, Anna M. Caballero, John Chang, Michael A. Ramos, Julie Nauman, Ted DeJung, Carson Johnson, Dennis Hayashi, Cecilia Castellanos, and Frank Roesch with prejudice. ECF No. 49.  Plaintiff had failed to serve these defendants, and despite an opportunity to file an amended complaint and serve the previously unserved defendants, ECF No. 48, Plaintiff did not file or serve an amended complaint.

On March 11, 2016, remaining Defendants Azevedo, Estes, and Pacheco filed the present motion for summary judgment.  ECF No. 65.  Plaintiff did not file an opposition, and Defendants did not file a reply.

### C.      Jurisdiction

This Court has jurisdiction under 28 U.S.C. § 1331.

## II.      LEGAL STANDARD

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific

1   facts showing there is a genuine issue for trial." Id. The court draws all reasonable factual

2   inferences in favor of the non-movant. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986).

3   The non-moving party "cannot defeat summary judgment with allegations in the complaint, or

4   with unsupported conjecture or conclusory statements." Hernandez v. Spacelabs Med. Inc., 343

5   F.3d 1107, 1112 (9th Cir. 2003).

6   **III.    DISCUSSION**

7       Plaintiff alleges that Defendants conspired to and committed acts that resulted in multiple

8   violations of her constitutional rights. See ECF No. 21. Plaintiff alleges the following: (1)

9   Defendants deprived Plaintiff of her "right to counsel of choice" in violation of multiple

10  Constitutional Amendments; (2) Defendants subjected Plaintiff to "peonage and involuntary

11  servitude" in violation of the Thirteenth Amendment; (3) Defendants violated Plaintiff's

12  Fourteenth Amendment rights under 18 U.S.C §§ 241 and 242; (4) and Defendants violated

13  Plaintiff's Fourth Amendment rights by falsely arresting her and using excessive force in

14  effectuating the arrest. Id.

15      The Court discusses each of Plaintiff's claims in turn.

16      **A.    Right to Counsel of Choice**

17      Plaintiff alleges Defendants violated several of her constitutional rights by infringing on

18  her "right to counsel of choice." ECF No. 21 at 6–9.

19          **1.    Sixth and Fourteenth Amendment Right to Counsel**

20      The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall . . .

21  have the assistance of counsel for his defense." See U.S. Const. amend. VI. Section 1 of the

22  Fourteenth Amendment mandates that "[n]o State shall . . . deprive any person of life, liberty, or

23  property, without due process of law . . . ." See U.S. Const. amend. XIV. "The Sixth and

24  Fourteenth Amendments of our Constitution guarantee that a person brought to trial in any state or

25  federal court must be afforded the right to the assistance of counsel before he can be validly

26  convicted and punished by imprisonment." Martinez v. Court of Appeal of California, Fourth

27  Appellate Dist., 528 U.S. 152, 154 (2000).

28      Plaintiff alleges that Defendants violated her Sixth Amendment right to counsel.

United States District Court
Northern District of California

6

Specifically, Plaintiff alleges she "has a right to counsel of her own choice . . . as set forth in the [Sixth] Amendment of [the] U.S. Constitution," and "Defendants are in concert with the California State Legislature to deny Plaintiff[] counsel of her own choice." Id. ¶¶ 31–32.  Defendants respond that Plaintiff's Sixth and Fourteenth Amendment right to counsel claims fail for the following reasons:  (1) Plaintiff does not allege that Defendants Azevedo, Estes, or Pacheco denied her the right to counsel; (2) Plaintiff fails to allege how her right to counsel was denied; (3) Plaintiff does not state why the denial of her right to counsel in her state court criminal proceedings gives rise to a civil claim in federal court; and (4) sworn declarations from each officer show that at no time did the officers deny or attempt to deny Plaintiff her right to counsel for her criminal proceeding.  ECF No. 65 at 13–14.[4]

Defendants aver they did not deny or attempt to deny Plaintiff her right to counsel during her criminal proceedings.  ECF No. 65-1, Azevedo Decl. ¶ 11; ECF No. 65-2, Estes Decl. ¶ 11; ECF No. 65-3, Pacheco Decl. ¶ 13.  Aside from Plaintiff's allegations in her Complaint that Defendant conspired to violate this right, Plaintiff has not submitted any evidence from which a reasonable jury could find in her favor on this claim.  Accordingly, Defendants are entitled to summary judgment on this claim.

### 2.    First Amendment Freedom of Speech and Freedom of Association

The First Amendment protects freedom of speech and freedom of association.  The latter provides "the right to associate for expressive purposes." Roberts v. U.S. Jaycees, 468 U.S. 609, 623 (1984).

Plaintiff alleges the First Amendment guarantees her freedom of speech and freedom of association, and, therefore, "Plaintiff is free to associate with counsel of her choice and to have a spokesman (counsel of her choice speak to her)." Id. ¶¶ 34–35.  Defendants respond that Plaintiff's First Amendment claim fails because she does not allege if and how any of the individual CHP officers prevented her from associating with any group, including counsel.  ECF 65 at 14.  Defendants further stress that they have provided evidence that they did not deny or

---

[4] Citations are to the pages assigned by the Court's electronic case filing system and not to the internal pagination of the document.

1    attempt to deny plaintiff her right to counsel.  Id.

2        The Court agrees.  Plaintiff does not allege any conduct or put forth any evidence that

3    allows a reasonable jury to find that Defendants' actions restrained Plaintiff's First Amendment

4    rights.  The Court grants Defendants' motion for summary judgment as to Plaintiff's First

5    Amendment claim.

6                    **3.        Fifth Amendment Due Process**

7        The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or

8    property, without due process of law . . . ."  "The Fifth Amendment prohibits the federal

9    government from depriving persons of due process, while the Fourteenth Amendment explicitly

10   prohibits deprivations without due process by the several States: '*nor shall any State* deprive any

11   person of life, liberty, or property, without due process of law.'"  Castillo v. McFadden, 399 F.3d

12   993, 1002 (9th Cir. 2005) (quoting U.S. Const. amend. XIV) (emphasis in original).

13       Plaintiff alleges that by denying her counsel of choice, Defendants also violated her Fifth

14   Amendment rights because "Due Process is guaranteed by both the 5th and the 14th amendments

15   to the [C]onstitution."  ECF No. 21 ¶ 37.  Defendants respond that Plaintiff fails to allege what

16   actions by the CHP officers violated her due process rights, and that even if Plaintiff had alleged

17   specific conduct, Defendants "are employees of the State of California and the Fifth Amendment's

18   due process clause only applies to the federal government."  ECF No. 65 at 15 (citing Bingue v.

19   Pranchak, 512 F.3d 1169, 1174 (9th Cir. 2008)).

20       Defendants are CHP officers employed by the State of California.  As such, the Court

21   grants Defendants' motion for summary judgment as to Plaintiff's Fifth Amendment claim.  See

22   Bingue, 512 F.3d at 1174 ("[Defendant] is a local law enforcement official, and the Fifth

23   Amendment's due process clause only applies to the federal government.").[5]

24
_____

25   [5] With regard to Holland's passing reference to the Fourteenth Amendment, it is true that the
     Fourteenth Amendment gives Holland the "right to be free . . . from conduct by law enforcement
26   officers that shocks the conscience or offends human dignity," and that this right is enforceable by
     an action pursuant to 42 U.S.C. § 1983.  Fontana v. Haskin, 262 F.3d 871, 878 (9th Cir. 2001).
27   But Holland pleads no facts, and has submitted no evidence, from which a reasonable jury could
     find that any of the remaining defendants did anything actionable.  "Under our precedents, a party
28   cannot establish a disputed question of material fact, and thereby avoid summary judgment, by
     making a 'bare assertion' that is devoid of 'any legal or factual support.'"  Kitchens v. Pierce, 565

United States District Court
Northern District of California

8

#### 4.      Eighth Amendment Cruel and Unusual Punishment

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  The Eighth Amendment applies "only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions."  Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977).

Plaintiff alleges that Defendants violated her Eighth Amendment rights and subjected her to cruel and unusual punishment—in the form of mental stress—by denying her counsel of choice. ECF No. 21 ¶ 41.  There is no evidence that Defendants took any action regarding Holland's choice of counsel.  Plaintiff does not allege that any of the CHP officers had any contact with her after she was arrested and booked into Santa Rita County Jail.  ECF No. 65 at 15.

Plaintiff does not rebut Defendants' evidence that they did not interfere with her right to counsel of choice.  The Court grants Defendants' motion for summary judgment as to Plaintiff's Eighth Amendment claim.

#### 5.      Ninth and Tenth Amendments Denial of Counsel

The Ninth Amendment states "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."  The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

Plaintiff alleges that the Ninth and Tenth Amendments protect her right to counsel of choice from encroachment by any individual or governmental body.  ECF No. 21 ¶¶ 42–43. Defendants argue Plaintiff improperly relies on the Ninth and Tenth Amendments to vindicate her "right to counsel of her choice," Plaintiff's allegations are not specific to the CHP officers, and the evidence shows the officers did not encroach Plaintiff's right to counsel.  ECF No. 65 at 16. Defendants also note that Plaintiff provides no case law holding that the Tenth Amendment, either alone or in conjunction with the Ninth Amendment, provides grounds upon which to bring a civil

United States District Court
Northern District of California

F. App'x 590, 591 (9th Cir. 2014) (quoting DeNieva v. Reyes, 966 F.2d 480, 486 (9th Cir. 1992). Thus, even generously construing Holland's Complaint to include a claim under the Fourteenth Amendment would not save it from summary judgment.

1  rights claim.

2      The Ninth Amendment has never been recognized as independently securing any

3  constitutional right for purposes of pursuing a civil rights claim.  See Strandberg v. City of Helena,

4  791 F.2d 744, 748 (9th Cir. 1986).  The Tenth Amendment "creates no constitutional rights

5  cognizable in civil rights cause of action."  Id. at 749.  Plaintiff does not provide argument to

6  support her contention that the Ninth and Tenth Amendments provide grounds to bring her right to

7  counsel of choice claim.  The Court grants summary judgment as to Plaintiff's Ninth and Tenth

8  Amendment claims.

9          **B.      Infliction of Peonage and Involuntary Servitude**

10      Section 1 of the Thirteenth Amendment provides "[n]either slavery nor involuntary

11  servitude, except as punishment for crime whereof the party shall have been duly convicted, shall

12  exist within the United States, or any place subject to their jurisdiction."

13      Plaintiff alleges that the Thirteenth Amendment grants her protection against "peonage and

14  involuntary servitude where the actions of the Defendants appear to destine Plaintiff."  ECF No.

15  21 ¶ 44.  Defendants argue that the Thirteenth Amendment is not relevant to a lawsuit regarding a

16  traffic enforcement stop, arrest, and use of force.  ECF No. 65 at 16.  Defendants urge the Court

17  grant summary judgment on this claim because Plaintiff "fails to allege the manner in which any

18  one of the CHP subjected [P]laintiff to involuntary servitude."  Id.

19      Plaintiff fails to put forth evidence that would allow a reasonable jury to find that

20  Defendants' conduct forced Plaintiff into slavery or involuntary servitude.  The Court accordingly

21  grants summary judgment on this claim.

22          **C.      Fourteenth Amendment Claim Based on 18 U.S.C. §§ 241 and 242**

23      Section 241 protects against the interference with "any right or privilege secured by the

24  Constitution or laws of the United States."  18 U.S.C. § 241.  Section 242 prohibits the

25  "deprivation of any rights, privileges, or immunities secured or protected by the Constitution or

26  laws of the United States" under color of law.  18 U.S.C. § 242.

27      Plaintiff alleges that the Fourteenth Amendment and 18 U.S.C. §§ 241 and 242 grant her

28  protection from "the acts of Defendants," and that Defendants actions constitute a violation of

United States District Court
Northern District of California

10

1    their "Oaths of Office as covered by [18 U.S.C. §§ 241 and 242]."  ECF No. 21 ¶ 29.  Defendants

2    argue that Plaintiff "fails to identify any of the CHP officers with respect to this claim," and that

3    "federal criminal statutes do not provide a basis for civil liability."  ECF No. 65 at 16.

4         Sections 241 and 242 are "criminal provisions" and "provide no basis for civil liability."

5    Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  The Court grants Defendants' motion for

6    summary judgment as to Plaintiff's 18 U.S.C. § 241 and § 242 claims.

7         **D.    Plaintiff's False Arrest and Excessive Force Claims and Defendants' Qualified
              Immunity**

8

9         Defendants seek summary judgment for Plaintiff's false arrest and excessive force claims.

10   See ECF No. 65 at 17.  Defendants contend that Plaintiff failed to create a genuine issue as to

11   whether her Fourth Amendment rights were violated.  Defendants argue that even if Plaintiff's

12   FAC states a cognizable claim under the Fourth Amendment, Defendants are entitled to qualified

13   immunity as Defendants' conduct did not "violate clearly established statutory or constitutional

14   rights of which a reasonable person would have known."  ECF No. 65 at 17 (citing Harlow v.

15   Fitzgerald, 457 U.S. 800, 818 (1982)).

16        Qualified immunity balances two important but competing interests – "the need to hold

17   public officials accountable when they exercise power irresponsibly and the need to shield

18   officials from harassment, distraction, and liability when they perform their duties reasonably."

19   Pearson v. Callahan, 555 U.S. 223, 231 (2009).  Qualified immunity protects government officials

20   from liability for civil damages "unless a plaintiff pleads facts showing (1) that the official

21   violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the

22   time of the challenged conduct."  Wood v. Moss, 134 S. Ct. 2056, 2066–67 (2014) (quoting

23   Ashcroft v. al–Kidd, 131 S. Ct. 2074, 2080 (2011)); Harlow, 457 U.S. at 818.  Courts are

24   "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified

25   immunity analysis should be addressed first in light of the circumstances in the particular case at

26   hand."  Pearson, 555 U.S. at 236.  "If an official could reasonably have believed her action were

27   legal in light of clearly established law and the information she possessed at the time, she is

28   protected by qualified immunity."  Franklin v. Fox, 312 F.3d 423, 437 (9th Cir. 2002).

United States District Court
Northern District of California

United States District Court
Northern District of California

### 1.    False Arrest

Under California Penal Code § 148(a)(1), "[t]he legal elements of a violation . . . are as follows: (1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties." In re Muhammed C., 95 Cal. App. 4th 1325, 1329 (2002) (citations omitted). "For a § 148(a)(1) conviction to be valid, a criminal defendant must have resisted, delayed, or obstructed a police officer in the lawful exercise of his duties. In California, the lawfulness of the officer's conduct is an essential element of the offense of resisting, delaying, or obstructing a peace officer." Smith v. City of Hemet, 394 F.3d 689, 695 (9th Cir. 2005).

Plaintiff alleges she was falsely arrested. ECF No. 21 ¶¶ 5, 38, 86. Defendants respond that they had probable cause to arrest Plaintiff because, based on the totality of circumstances, "a prudent person would believe that Ms. Holland was violating Penal Code section 148." ECF No. 65 at 19.

California Vehicle Code section 14607.6(c)(1) mandates that "[i]f a driver is unable to produce a valid driver's license on demand of a peace officer . . . the vehicle shall be impounded regardless of ownership . . . ." Plaintiff's own allegations state that she resisted Officer Azevedo's attempt to impound her vehicle. ECF No. 21 ¶ 5 ("Officer John Az[e]vedo, #19517, announced that he was going to have my car towed, I refused his offer . . . ."). Moreover, Defendants' declarations and the dash camera videos strongly support a finding of probable cause. Officers repeatedly asked Plaintiff to get out of her car so that they could tow it, but Plaintiff repeatedly refused. Defendants also warned Plaintiff that they would have to break her window and remove her from the car if she did not comply with their requests. Plaintiff persisted in her refusal to exit the vehicle. Plaintiff repeatedly delayed and obstructed Defendants' performance of their duties.

On this evidence, there is no genuine dispute of material fact that Defendants had probable cause to arrest Plaintiff for a violating Penal Code § 148(a)(1). Plaintiff had no constitutional right, much less a clearly established one, to disregard Defendants' lawful orders or to do so without the consequence of arrest under these circumstances. Defendants are therefore entitled to

qualified immunity, and the Court grants Defendants' motion for summary judgment as to Plaintiff's false arrest claim.

### 2.       Excessive Force

Having determined that Defendants had probable cause to place Plaintiff under arrest, the Court next turns to the actions Defendants took in effectuating that arrest to determine the propriety of summary judgment on Plaintiff's excessive force claim.

The reasonableness of an officer defendant's conduct is analyzed under the substantive law of Graham v. Connor, 490 U.S. 386 (1989).  See Coles v. Eagle, 704 F.3d 624, 628 (9th Cir. 2012).  The court first considers "the nature and quality of the alleged intrusion" and "then consider[s] the governmental interests at stake by looking at (1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight."  Id.; see also Graham, 490 U.S. at 396.  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Graham, 490 U.S. at 396.  These factors are not exclusive, and a court must examine the totality of circumstances.  Coles, 704 F.3d at 628.  "Because such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom . . . summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly."  Id.

Plaintiff alleges Defendants used excessive force in the process of removing her from her vehicle during the arrest.  ECF No. 21 ¶¶ 5, 38–39, 86.  Defendants argue they used only the force necessary to get Plaintiff out of her car.  ECF No. 65 at 20.  Defendants contend there is no case law that supports a finding that officers' use of force—as shown in the video and described in the declarations—to remove a person from a vehicle before towing violates the Fourth Amendment. Id.  Defendants further assert it would not have been clear to a reasonable officer that this conduct was unlawful in the situation they confronted, the right was not clearly established, and they are entitled to qualified immunity.  Id.

An assessment of the facts in the light most favorable to Plaintiff shows that her Fourth

1    Amendment rights were not violated.

2                              a.    **Nature and Quality of the Intrusion**

3             The Court first considers "the nature and quality" of the intrusion on Plaintiff's rights.

4    <u>Coles</u>, 704 F.3d at 628.  "The gravity of the particular intrusion that a given use of force imposes

5    upon an individual's liberty interest is measured with reference to 'the type and amount of force

6    inflicted.'"  <u>Young v. Cty. of Los Angeles</u>, 655 F.3d 1156, 1161 (9th Cir. 2011) (quoting <u>Deorle v.</u>

7    <u>Rutherford</u>, 272 F.3d 1272, 1279 (9th Cir. 2001).

8             Plaintiff has not established a prima facie case of a significant Fourth Amendment

9    intrusion.  Rather, the evidence on this record conclusively establishes that Defendants employed a

10   level of force that is "low on the continuum of tactics available to police officers."  <u>Donovan v.</u>

11   <u>Phillips</u>, No. 3:14-CV-00680-CRB, 2015 WL 993324, at *5 (N.D. Cal. Mar. 4, 2015).  Defendants

12   broke Plaintiff's passenger side window, opened the passenger door, and attempted to pull her

13   from the car through the passenger door.  There is no evidence that Defendants used force, such as

14   kicks, punches, pepper spray, or baton blows, to effectuate her arrest.  This case is unlike <u>Coles v.</u>

15   <u>Eagle</u>, where the Ninth Circuit determined that the plaintiff had established a significant Fourth

16   Amendment intrusion where the officers broke the driver's side glass window, pulled the plaintiff

17   through the broken window, kicked plaintiff in the upper torso during the extraction, and

18   continued to beat plaintiff until the officers handcuffed him.  704 F.3d at 628.  The Court

19   concludes that the force used to extract Plaintiff through the door was not "capable of inflicting

20   significant pain and causing serious injury."  <u>Young</u>, 655 F.3d at 1162.  There is no evidence that

21   officers used any force greater than necessary to effectuate a lawful arrest.

22            In light of the fact, previously discussed, that Plaintiff had no legal right under § 148(a)(1)

23   to disregard Defendants' orders that Plaintiff exit her vehicle, and that a low level of force was

24   used to effect compliance, the Court concludes that the intrusion on Plaintiff's Fourth Amendment

25   interests was minimal.

26                              b.    **Governmental Interests at Stake**

27            The Court next turns to the severity of the crime, the immediacy of the threat, and whether

28   Plaintiff evaded arrest to determine whether the use of force was reasonable.

*United States District Court*
*Northern District of California*

1   The Court first examines the severity of the crime.  Defendants state that Plaintiff was

2   pulled over because she drove over the center divide and because of her expired registration

3   sticker.  Plaintiff's vehicle registration and driver's license were also expired.  Plaintiff thereafter

4   refused to exit her vehicle so that it could be towed.  Plaintiff's traffic violations and her

5   obstruction of a police officer are not serious offenses.  See Mattos v. Agarano, 661 F.3d 433, 444

6   (9th Cir. 2011) (holding that plaintiff's failure to sign a traffic citation and speeding in a school

7   zone were not serious offenses); Davis v. City of Las Vegas, 478 F.3d 1048, 1055 (9th Cir. 2007)

8   (noting that trespassing and obstructing a police officer were not severe crimes).

9   The Court next turns to whether Plaintiff posed an immediate threat to the safety of

10  Defendants.  Plaintiff was unarmed and never attempted to harm Defendants in any way.

11  Plaintiff's car was boxed in with a tow truck in front of her and Officer Azevedo's patrol car

12  behind her.  At one point, Plaintiff's vehicle was further boxed in on the driver's side by Officer

13  Estes' patrol car.  Based on these facts, a reasonable jury could conclude that the officers did not

14  face an immediate threat to their safety.

15  Finally, the Court looks at whether Plaintiff was "actively resisting arrest or attempting to

16  evade arrest by flight and whether any other exigent circumstances . . . existed at the time of the

17  arrest." Coles, 704 F.3d at 629.  Here, Defendants have put forward evidence showing that

18  Defendants repeatedly asked Plaintiff to exit her vehicle voluntarily, and she refused.  Defendants

19  further aver that Plaintiff held on to her steering wheel and wedged her body to thwart Defendants'

20  efforts to remove her from her car.  Plaintiff does not dispute this evidence.  The Court concludes

21  that Plaintiff resisted arrest.  See Mattos, 661 F.3d at 445 (suspect who "refused to get out of her

22  car when requested do so and later stiffened her body and clutched her steering wheel to frustrate

23  the officers' efforts to remove her from her car" had "engaged in some resistance to arrest").

24  Ultimately, the severity of "the force which is applied must be balanced against the need

25  for that force." Drummond ex rel. Drummond v. City of Anaheim, 343 F.3d 1052, 1057 (9th Cir.

26  2003); Young, 655 F.3d at 1166 ("We conclude our analysis of whether the force used by [the

27  defendant] was reasonable by balancing "the gravity of the intrusion on the individual against the

28  government's need for that intrusion.") (citation omitted).

United States District Court
Northern District of California

1    Having determined that the force used against Plaintiff was low and that the government

2    had an interest in the use of that force, the Court concludes that, taking the facts in the light most

3    favorable to Plaintiff, the force that Defendants used was not excessive and did not violate the

4    Fourth Amendment.  The Court sees no evidence that comes close to raising a genuine question of

5    material fact as to whether Plaintiff's constitutional rights were violated.

6    However, even if the Court were to conclude that Defendants had used excessive force in

7    effectuating Plaintiff's arrest, Defendants would still be entitled to qualified immunity.  The force

8    used by Defendants did not violate clearly established law such that the officers would be "on

9    notice their conduct [was] unlawful."[6]  Hope v. Pelzer, 536 U.S. 730, 739 (2002).  See also

10   Pearson, 555 U.S. at 244 ("This inquiry turns on the objective legal reasonableness of the action,

11   assessed in light of the legal rules that were clearly established at the time it was taken." (internal

12   quotation marks omitted)); al-Kidd, 131 S.Ct. 2074, 2083 (2011) ("We do not require a case

13   directly on point, but existing precedent must have placed the statutory or constitutional question

14   beyond debate.").

15   Accordingly, Defendants are entitled to qualified immunity, and the Court grants

16   Defendants' motion for summary judgment on Plaintiff's excessive force claim.

17                                                **CONCLUSION**

18   The Court grants Defendants' motion for summary judgment on all claims.

19

20   _____

[6] The closest precedent the Court could locate to the circumstances presented here is Coles v.

21   Eagle, 704 F.3d 624 (9th Cir. 2012).  The factual differences between the instant action and Coles
     make it "difficult for [Defendants] to determine how the relevant legal doctrine, here excessive

22   force, will apply to the factual situation [Defendants] confront[ed]."  Saucier v. Katz, 533 U.S.
     194, 205 (2001).  In Coles v. Eagle, the Ninth Circuit reversed the district court's grant of

23   summary judgment where officers had broken the driver-side window on the plaintiff's car,
     dragged him through the window, and kicked him in the torso as they did so. 704 F.3d at 628.  The

24   court found for purposes of the motion that the defendants continued to beat plaintiff until they
     handcuffed him.  Id.  The Ninth Circuit, however, did not hold that the defendant officers' conduct

25   clearly violated plaintiff's Constitutional rights.  The Coles court concluded that, under the
     circumstances of that case, a question of fact required the jury's determination and summary

26   judgment was inappropriate.  Id. at 630.  See also Woods v. Arizona Dep't of Public Safety No.
     CV-13-00746-PHX-JJT, 2016 WL 537584, at *3 (D. Ariz. Feb. 11, 2016) (granting summary

27   judgment on a driver's excessive force claim).  In Woods, the district court determined the
     absence of controlling case law and concluded that the officer defendant's "decision to swing the

28   baton to gain entry to the car where that strike might also hit Plaintiff, even if he was mistaken as
     to its constitutionality, was a reasonable mistake."  Id.

United States District Court
Northern District of California

1      All pending deadlines and hearings in this action are vacated.  Defendants shall submit a

2  proposed form of judgment within seven days of the date of this Order.  Plaintiff will then have

3  seven days from the receipt of the proposed judgment to either approve it as to form or file her

4  objections.  Defendants may file a response to Plaintiff's objections, if any, within seven days

5  after Plaintiff's objections are due.

6      IT IS SO ORDERED.

7  Dated: May 3, 2016

8

9  _____

10                     JON S. TIGAR
                  United States District Judge

United States District Court
Northern District of California

17